UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TRANSFIELD ER FUTURES LIMITED | C.A. NO. _____ |
| vs. | SECTION "___" |
| | DIVISION _____ |
| DEIULEMAR COMPAGNIA DI NAVIGAZIONE S.P.A. | |

## VERIFIED COMPLAINT

**NOW INTO COURT**, through undersigned counsel, comes Plaintiff Transfield ER Futures Limited ("Transfield" or "Plaintiff") and for its Verified Complaint against Defendant Deiulemar Compagnia di Navigazione S.p.A. ("DCDN" or "Defendant"), *in personam*, alleges upon information and belief as follows:

### JURISDICTION, VENUE AND PARTIES

1.      This is an admiralty and maritime claim within the Court's jurisdiction pursuant to 28 U.S.C. § 1333, within the meaning of Rule 9 (h) of the Federal Rules of Civil Procedure and the Supplemental Rules for Certain Admiralty or Maritime Claims.

2.      Venue is proper in this Court because, as will be more fully demonstrated below, DCDN has agreed to file an appearance before this Honorable Court in this lawsuit.

3.  At all material times Transfield was and still is an entity organized and existing under the laws of the British Virgin Islands.

4.  At all material times DCDN was and still is an entity organized and existing under the laws of Italy.

5.  At all material times the M/V MICHELE IULIANO (IMO No. 9384980) was and still is an Italian-flag bulk cargo vessel.

6.  At all material times DCDN was and still is the owner of the M/V MICHELE IULIANO.

## FACTS

7.  During July 2008, Transfield (as Seller) and DCDN (as Buyer), entered into two (2) forward freight agreements ("FFAs")[1]: No. 035889 dated July 11, 2008; and No. 036858 dated July 17, 2008.

8.  Transfield also entered into four (4) additional FFAs with Deiulemar Shipping S.p.A. ("Deiulemar Shipping") which, upon information and belief, is a company related to DCDN. However, disputes arising under these additional FFAs are not the subject of these proceedings but are the subject of separate, but related, proceedings pending in the Eastern District of Louisiana styled "Transfield ER Futures Limited vs. Deiulemar Shipping S.p.A." bearing Civil Action 11-099, Section "K", Mag. Div. 5, commenced by Plaintiff.

9.  The FFAs between the parties hereto were entered into, contained in and evidenced by brokers' fixture recaps or "Confirmations of FFA Trade" that were subject to standard Forward Freight Agreement Brokers Association 2007 terms (the "FFABA 2007 Terms") and the terms of

---

[1] Forward Freight Agreements are commitments to perform in the future a shipping service between shipowners, charterers, and/or traders.

the 1992 International Swap Dealers' Association, Inc. (Multi-Currency-Cross Border) Master Agreement (the "ISDA Master Agreement"). Copies of the FFAs with incorporated FFABA 2007 Terms are attached hereto *in globo* as Exhibit "A". A copy of the ISDA Master Agreement is attached hereto as Exhibit "B".

10. For each FFA, the parties agreed on the Contract Route(s), Contract Month(s), Contract Quantity, Settlement Period, Settlement Date, and Contract Rates that would govern that particular contract.

11. With respect to the May 2010 contract month, Settlement Sums under the FFAs were due and payable to Transfield by DCDN in following amounts:

| FFA No. | Settlement Sum (U.S. Dollars) |
| --- | --- |
| 035889 | $747,335.76 |
| 036858 | $428,731.02 |

12. On May 31, 2010, Transfield invoiced DCDN for the above amounts. Pursuant to Clause 8 of the FFABA 2007 Terms and/or Clause 2(a)(i) of the ISDA Master Agreement, under each FFA the Settlement Sums set forth above in respect to the May 2010 contract month were due and payable to Transfield on or before June 7, 2010. Copies of the Invoices for the May 2010 contract month settlement are attached hereto *in globo* as Exhibit "C".

13. In breach of Clause 8 of the FFABA 2007 and/or Clause 2(a)(i) of the ISDA Master Agreement, DCDN failed to pay any of the above sums to Transfield by June 7, 2010.

14. On June 10, 2010, Transfield provided DCDN with written notice of its failure to pay in respect to each FFA. Copies of the June 10, 2010 notices attaching copies of previously sent invoices are attached hereto *in globo* as Exhibit "D". Subsequently, on June 17, 2010, Transfield provided DCDN with a further such notice of its failure to pay under the FFAs. Copies of the June 17, 2010 notices are attached hereto *in globo* as Exhibit "E".

15. DCDN failed to pay any or all of the above sums due Transfield within three (3) business days of receipt of either the June 10, 2010 notice or the June 17, 2010 notice. Such sums remain unpaid to this date.

16. Accordingly, under Section 5(a)(i) of the ISDA Master Agreement, a Failure to Pay Event of Default occurred in respect of DCDN and, by Section 6(a) thereof, Transfield became entitled to designate an Early Termination Date in respect of all outstanding Transactions which it did by (in each case) sending DCDN a written Notice of Early Termination effective on July 5, 2010 (the "Termination Notices"). Copies of the July 5, 2010 Termination Notices are attached hereto *in globo* as Exhibit "F".

17. As stated in the Termination Notices, the following sums were due and payable by DCDN to Transfield immediately:

| COUNTER PARTY | FFA NO. | LOSS CLAIMED |
|---|---|---|
| Deiulemar Compagnia | 035889 | $ 9,091,230.10 |
| Deiulemar Compagnia | 036858 | $ 6,089,888.91 |
|  | TOTAL: | $15,181,119.01 |

Accordingly, from July 5, 2010, the sum of $15,181,119.01 was due and payable from DCDN to Transfield in debt or as damages together with interest and costs.

18. DCDN has not paid the sums due Transfield. Instead, on June 18, 2010, it initiated a lawsuit in the London High Court seeking the return of certain Settlement Sums previously paid under the FFAs to Transfield on meritless grounds. Transfield has filed a counterclaim in the English High Court proceeding and will request in due course a stay of the instant action, which has been brought for the purpose of obtaining security for claims being pursued (and to be pursued) in the London High Court.

19. In February 2011, Transfield prepared the necessary pleadings to attach the M/V MICHELE IULIANO at Norfolk, Virginia, pursuant to Supplemental Rule B, to secure its claim against DCDN. In order to avoid the Rule B attachment of the M/V MICHELE IULIANO at Norfolk, and give the parties additional time to amicably negotiate security and counter-security for their respective claims, Transfield, Deiulemar Shipping and DCDN entered into a Standstill Agreement dated as of February 17, 2011. A copy of the Standstill Agreement is attached hereto as Exhibit "G".

20. The parties did not reach agreement on a suitable form of security and counter-security for their respective claims under Clause 2.2.3 of the Standstill Agreement.

21. Clause 2.2.4 of the Standstill Agreement provides:

> In the event that the parties cannot reach an agreement as per Clause 2.2.3 above within 28 days from the date the parties sign this Standstill Agreement, DCDN shall file, or cause to be filed, upon TERF's written demand, an appearance in the lawsuit that TERF has commenced or will commence against DCDN in the United States District Court for the Eastern District of Virginia or the Untied States District Court for the Eastern District of Louisiana, at TERF's option, and shall post,

        upon TERF's written demand, security in the form of cash and/or a bond with a court-approved surety or a surety acceptable to TERF to secure TERF's claims against DCDN in the sum of $15,181,119.01 as though the M/V MICHELE IULIANO had in fact been attached in the Untied States District Court for the Eastern District of Virginia or the United States District Court for the Eastern District of Louisiana under Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims and Deiulemar Shipping shall waive its rights to contest the validity of the attachment of the M/V LEONARDO LEMBO in the Louisiana proceedings. If the aforementioned security is not posted upon demand, then DCDN shall be deemed to be in default under this Agreement and TERF shall have the right to arrest and/or attach DCDN's vessels and/or other assets in any jurisdiction in order to enforce this Agreement in respect of its claims against DCDN.

    TERF is therefore bringing this admiralty and maritime claim pursuant to Supplemental Rule B and in order to enforce Clause 2.2.4 of the Standstill Agreement.

### RULE B AND OTHER RELIEF

22.     As confirmed by recent case law emanating from the United States District Court for the Southern District of New York, forward freight agreements or FFAs are maritime contracts and claims thereunder are entitled to process of maritime attachment. *See, e.g.*, *Brave Bulk Transport Ltd. v. Spot On Shipping Ltd.*, 2007 WL 3255823, at *2 (S.D. N. Y.); and *Flame S. A. v. Primera Maritime (Hellas) Ltd.*, 2010 WL 481075, at *2 (S. D. N. Y. ).

23.     DCDN cannot be found within the Eastern District of Louisiana or Virginia within the meaning of Rule B of the Supplemental Rules for Certain Admiralty or Maritime Claims; however, property belonging to DCDN, namely, the M/V MICHELE IULIANO, was within the Eastern District of Virginia in February 2011, which would have been subject to attachment under Rule B.

24. Moreover, DCDN has agreed and stipulated, pursuant to Clause 2.2.4 of the Standstill Agreement dated February 17, 2011, that it will file an appearance in this Rule B action and post security for Transfield's claims as though the M/V MICHELE IULIANO had in fact been attached within the Eastern District of Louisiana or Virginia under Rule B of the Supplemental Rules for Certain Admiralty or Maritime Claims.

25. Because this Verified Complaint sets forth an *in personam* maritime claim against a defendant that cannot be found within the District, the requirements for a Rule B attachment of the M/V MICHELE IULIANO are met.

**WHEREFORE**, Plaintiff, Transfield ER Futures Limited, prays that:

26. Process in due form of law, according to the rules and practices of this Honorable Court, may issue against DCDN, citing it personally to appear and answer all and singular the matters foresaid;

27. DCDN be required to appear herein, and answer all of the allegations under oath;

28. This Court retain jurisdiction over DCDN through its agreement to file an appearance in this action and its posting of security in this District as though the attachment of its property, goods, chattels, or credits and effects, namely, the M/V MICHELE IULIANO, had in fact taken place, in order to be in a position to enter judgment upon and a decree enforcing the final judgment of the London High Court that is hearing the parties' claims and counterclaims in this dispute;

29. Judgment be entered in favor of Transfield for the amount of its claims, with interest and costs, once the merits of the underlying dispute and the parties' claims and counterclaims are resolved in the London High Court, and that a decree of condemnation issue against the property and credits of DCDN for that amount; and

30. For such other, further and different relief as this Court may deem proper.

Dated: April 8, 2011

          Respectfully submitted,

By: /s/ Christopher O. Davis
    Christopher O. Davis, T.A. (LBN 4722)
    James H. Roussel (LBN 11496)
    Dawei Zhang (LBN 20037)
    Baker, Donelson, Bearman, Caldwell
      & Berkowitz, PC
    201 St. Charles Avenue, Suite 3600
    New Orleans, LA 70170
    Telephone: (504) 566-5200
    **ATTORNEYS FOR TRANSFIELD ER FUTURES LIMITED**

## VERIFICATION

STATE OF LOUISIANA

PARISH OF ORLEANS

BEFORE ME, the undersigned authority, personally came and appeared:

CHRISTOPHER O. DAVIS

BEING DULY SWORN, who deposes and says:

That he is an attorney at law admitted to practice in the Courts of the State of Louisiana, before this Honorable Court, and a shareholder of the firm of Baker, Donelson, Bearman, Caldwell & Berkowitz, PC, attorneys for the Plaintiff herein; and that he has read the foregoing Verified Complaint and knows the content thereof, and that the same is true to the best of his knowledge, information and belief; and that the reason this verification is made by deponent and not the Plaintiff is that Plaintiff is a foreign legal entity, no officers or directors of which are now within this District; and that the sources of deponent's information and belief are materials contained in his file, as well as statements made by or documents furnished by Plaintiff or its representatives.

That a diligent inquiry has been conducted by the firm of Baker, Donelson, Bearman, Caldwell, Berkowitz, PC in order to determine whether or not the Defendant in this action, Deiulermar Compagnia di Navigazione S.p.A., can be found within the Eastern District of Louisiana within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims as of February 2011 and this date; including review of local telephone directories and calling telephone directory assistance service, searching the Louisiana Secretary of State's official corporate database website, and conducting a multi-state Lexis-Nexis search of

all states; and based upon the result of these inquires, to the best of his knowledge, information and belief, the Defendant cannot be found within the Eastern District of Louisiana within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims.

_____
CHRISTOPHER O. DAVIS

SWORN TO AND SUBSCRIBED
BEFORE ME THIS 8th DAY OF
APRIL, 2011.

_____
NOTARY PUBLIC